1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSE BIGHAM,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>Defendant. | Case No. C15-349RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS MOTION FOR JUDGMENT UNDER FRCP 52 |

## I.        INTRODUCTION

This matter comes before the Court on Cross Motions filed by Plaintiff Rose Bigham and Defendant Liberty Life Assurance Company Of Boston ("Liberty Life"), seeking a final judgment from this Court under Federal Rule of Civil Procedure 52 based on an administrative record created in an underlying Employee Retirement Income Security Act ("ERISA") dispute. Dkt. ##10 and 24.  Plaintiff brings this action under ERISA, 29 U.S.C. § 1001 *et seq.* to recover long-term disability ("LTD") benefits under the Liberty Life Long-Term Disability Plan ("LTD Plan").  Ms. Bigham, who worked as a Security Technical Program Manager for Amazon, LLC ("Amazon"), argues that she is disabled under the terms of the LTD Plan due to "chronic intractable pain, fibromyalgia, seronegative spondyloarthropathy, cervical and lumbar

1
2
3
4
5
6
7

degenerative disc disease," and related conditions.  Dkt. #10 at 1-2.  Liberty Life argues that medical evidence and post-diagnosis surveillance do not establish that Ms. Bigham is disabled or otherwise unable to perform her own occupation.  For the reasons set forth below, the Court concludes that Ms. Bigham is entitled to long-term disability benefits under the terms of the LTD Plan.  The Court remands to Liberty Life the issue of extending benefits beyond the 24-month period prescribed for "own occupation" benefits.

## II.   PROCEDURAL ISSUES

8
9
10
11
12
13
14
15
16
17
18
19
20

Before turning to the merits of the parties' arguments, the Court must determine whether it is appropriate to resolve this case on the parties' cross motions for judgment under Rule 52 (Dkt. ## 10 and 24) as opposed to summary judgment under Rule 56.  The answer depends on what standard of review the court applies.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948 (1989) ("ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations.").  The parties here have simplified the matter by stipulating to *de novo* review.  *See* Dkt. #23 at 12.  The court accepts the parties' stipulation and reviews the record *de novo*.  *See Rorabaugh v. Cont'l Cas. Co.*, 321 Fed. App'x 708, 709 (9th Cir. 2009) (court may accept parties' stipulation to *de novo* review).

21
22
23
24
25
26
27
28

Where review is under the *de novo* standard, the Ninth Circuit has not definitively stated the appropriate vehicle for resolution of an ERISA benefits claim.  The *de novo* standard requires the court to make findings of fact and weigh the evidence.  *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069 (9th Cir. 1999) (*de novo* review applies to plan administrator's factual findings as well as plan interpretation).  Typically, a request to reach judgment prior to trial would be made under a Rule 56 motion for summary judgment,

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 2

however under such a motion the court is forbidden to make factual findings or weigh evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Instead, the parties here propose the Court conduct a trial on the administrative record under Rule 52.

This procedure is outlined in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (noting that "the district court may try the case on the record that the administrator had before it"). In a trial on the administrative record:

> The district judge will be asking a different question as he reads the evidence, not whether there is a genuine issue of material fact, but instead whether [the plaintiff] is disabled within the terms of the policy. In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.

*Id*. Thus, when applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute.  *See Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) (on *de novo* review of an ERISA benefits claim, the "appropriate proceeding[] . . . is a bench trial and not the disposition of a summary judgment motion"); *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 (N.D. Cal. 2011) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52"); *but see Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005) ("When there is no dispute over plan interpretation, the use of summary judgment . . . is proper regardless of whether our review of the ERISA decision maker's decision is *de novo* or deferential.").

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 3

Given the above law, and the clear intent of the parties, the Court will resolve the parties' dispute in a bench trial on the administrative record rather than on summary judgment. Therefore, the court issues the following findings and conclusions, pursuant to Rule 52.

### III.     FINDINGS OF FACT

1. Plaintiff Rose Bigham was employed by Amazon as an "AWS Security Technical Program Manager II". AR2389.[1]  Ms. Bigham's position required "strong problem-solving skills, excellent communication skills, the ability to influence people from customers to managers," as well as "exemplary project management, critical thinking ... and a passion for creating reliable and maintainable systems." *Id.*  It required her to be "extremely good at multi-tasking, innovative, creative, self-directed and a great team player" and to be able to "drive continuous process improvement, and collaborate effectively with aggressive cross-functional business and software development teams to solve problems and implement new solutions[.]" *Id.*  This position also required Ms. Bigham to "complete complicated mathematical equations and assist in the protection of information."

2. Ms. Bigham was offered Short Term Disability ("STD") and Long Term Disability ("LTD") benefits by her employer Amazon through plans administered by Liberty Life. *See* AR001827-AR001911 (STD Plan); AR000001-45 (LTD Plan); AR000046 (Amazon's application for Liberty Life STD and LTD coverage); AR000047 (claim sheet for Rosemary Bigham indicating LTD and STD benefits eligible as of August 1, 2011).  As a regular full time employee working a minimum of 30 hours per week, Ms. Bigham was eligible for STD and LTD benefits.  AR001829; AR00003.

---

[1] The Court will use the same citation system as the parties. "AR" refers to the administrative record submitted by Plaintiff and available at Dkt. ## 11-16.

3. Under the STD Plan, benefits are awarded based on an employee meeting the following definition of disability: an employee "as a result of Injury or Sickness [is] unable to perform the Material and Substantial Duties of [his/her] Own Job." AR01832. These benefits are only available for a short term: 25 weeks. AR001830. "Sickness" is defined as "illness, disease, pregnancy or complications of pregnancy." AR001839. "Material and Substantial Duties" is defined as "responsibilities that are normally required to perform your Own Job and cannot be reasonably eliminated or modified." AR001835.

4. Under the LTD Plan, benefits are awarded beyond the 25-week window. Under this plan, "Disabled" is defined as when the employee "as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation." AR00008. "Sickness" is defined as "illness, disease, pregnancy or complications of pregnancy." AR00015. The Plan defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." AR00011.

5. LTD Plan benefits are limited to 24 months unless the employee can show that she "is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." AR00004; AR00008. "Any Occupation" is defined as "any occupation that the [employee] is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." AR00007.

6. Records indicate that Ms. Bigham has suffered from the chronic conditions of seronegative spondyloarthropathy, fibromyalgia, and cervical and lumbar degenerative

disc disease prior to 2013. *See* AR001994-97; AR001033; AR001205; AR001363; AR1379. In January of 2013, Ms. Bigham suffered from an increase in her symptoms from these chronic conditions, and felt that she could no longer continue working. AR002332. Ms. Bigham applied for STD benefits, which Liberty Life granted. *See* AR002336. After several weeks of leave, Ms. Bigham attempted to return to work on March 10, 2013, at which point Liberty Life terminated her STD benefits. *Id*.

7. Ms. Bigham again stopped work on April 11, 2013, and reapplied for STD benefits, which Liberty Life granted on April 15, 2013. AR002454. In granting these benefits, Liberty Life specifically found that Ms. Bigham had an "inability to perform [her] job" and that there was "medically supported disability" as of April 12, 2013. AR002454.

8. On July 13, 2013, Liberty Life terminated Ms. Bigham's STD benefits. AR002412.

9. On September 18, 2013, Ms. Bigham's rheumatologist, Richard Neiman, M.D., stated in a declaration that he had diagnosed Ms. Bigham with fibromyalgia since 2009. AR001994. He stated that "Ms. Bigham's fibromyalgia causes her to experience many of the common symptoms of that disease including persistent widespread musculoskeletal pain, muscle stiffness, severe fatigue, disturbed sleep and disruption of cognitive function.… [including] problems with memory, learning new items, word searching and communicating effectively." AR001995. Dr. Neiman stated that Ms. Bigham's "pain is so severe as to require regular doses of morphine throughout the day." *Id.*

10. On September 20, 2013, Ms. Bigham's primary care physician, Teresa Girolami, M.D., stated in a letter eventually submitted to Liberty Life that Ms. Bigham "cannot sit or stand for long periods of time, she finds it very difficult to look at a computer screen,

her ability to concentrate on everyday tasks has been significantly reduced, let alone be in a meeting with her peers or supervisors.  She experiences visual changes and headaches and her muscle and joint pain is exacerbated.  She needs to lie down to recover and be removed from the situation." AR002390.

11.  On October 23, 2013, Ms. Bigham's pain specialist, David Goodman, M.D., stated in a declaration that "[o]ver the past year, [Ms. Bigham] has noted marked progression of her pain and fatigue.  This is despite maximum medical therapy which includes Enbrel a potent anti-inflammatory medication, opiates, muscle relaxants as well as… physical therapy." AR002155.  Dr. Goodman went on to state that, in his professional opinion as a pain management specialist, he had "no reason to doubt or disbelieve Ms. Bigham's description of her pain and disability," and that Ms. Bigham's "inflammation and degeneration in her spine and right hip is certainly sufficient to cause the kind of pain she describes." AR002156.

12.  On December 18, 2013, Liberty Life advised Ms. Bigham that its benefit termination had been incorrect, and reinstated STD benefits through October 10, 2013.  AR001749.  By extending STD benefits to this date, Liberty Life effectively paid the maximum benefits available under the STD Plan.  *See* Dkt. #24 at 3.

13.  Ms. Bigham applied for LTD benefits in early December 2013, and Liberty Life granted these benefits with a reservation of rights on February 25, 2014.  AR001558-59; AR001786.

14.  In 2014, Liberty life conducted a review of Ms. Bigham's medical records as well as letters and declarations from Ms. Bigham and her doctors concerning her conditions.  On January 13, 2014, Ms. Bigham reported: "I now suffer from severe, debilitating pain

1
2
3
4
5
6
7
8
9
10
11
12

and need pain medications to manage it… The medical conditions while I have been diagnosed with – and the medication to manage the symptoms – cause "brain fog" which has become increasingly difficult. Memory, language, ability to learn have all become incredibly challenging areas of deficit. In addition, the constant pain causes unrelenting fatigue which results in unpredictable episodes of sudden sleep – even while driving! I can no longer drive safely at all times." AR001679. Ms. Bigham reported that she could sit for 20 minutes at a time, stand for 5, and walk for 10-15 minutes. AR001677. When asked what she could do in a day, Ms. Bigham reported that she could sit a total of 3-5 hours, stand for a total of 5-10 minutes, and walk sometimes "not at all" and sometimes "up to 20-30 minutes." AR001677.

13
14
15
16
17
18
19

15. Ms. Bigham's doctors again supported her reported level of impairment. For example, Dr. Richard Neiman reported on January 14, 2014: "Ms. Bigham's fibromyalgia and AS cause her persistent widespread musculoskeletal pain, muscle stiffness, severe and debilitating fatigue, disturbed sleep and disruption of cognitive function. She experiences problems with memory, learning new items, word searching and communicating effectively. She is stiff and feels poorly all the time." AR001690.

20
21
22
23
24
25
26

16. Liberty Life hired an investigative agency to conduct surveillance on Ms. Bigham "over a seven day period from December 31 through January 2, 2015 and February 3 through 6, 2014." AR000557. This surveillance appeared to show Ms. Bigham driving short distances, bending over and lifting her small dog, walking along a trail for a short period of time, smiling and conversing with a friend, and lifting and moving an empty trash bin. *See* Dkt. ## 17; 19 (Surveillance Video CD submitted to Court).

27
28

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17. Liberty Life also forwarded all of the information in its claim file to consulting physicians for panel review.  Dr. Phillipe Chemaly, specializing in Physical Medicine and Rehabilitation, opined that plaintiff did indeed have the conditions claimed and agreed that she had pain.  AR00145-AR000163.  Dr. Mark Burns, a rheumatologist, confirmed that plaintiff met the criteria for fibromyalgia, and that her medical record did support restrictions.  AR00165-AR000173.  Dr. Burns also conducted a peer-to-peer discussion with plaintiff's rheumatologist, Dr. Park.  Dr. Burns reported that Dr. Park "noted that her assessment of the cognitive problems the claimant has been having is based on self-reported symptoms. There are no physical findings that would support impairment. … She does not feel the claimant can work because she has good days and bad."  AR00170-71.

18. On July 11, 2014, Liberty Life terminated Ms. Bigham's benefits.  AR000555.  Ms. Bigham appealed this decision, and Liberty life denied that appeal on February 3, 2015. AR000127-AR000131.  This litigation followed.

### IV.     CONCLUSIONS OF LAW

**A. Standard under ERISA**

1. ERISA provides that a qualifying ERISA plan "participant" may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  29 U.S.C. § 1132(a)(1)(B);  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) (ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court.").  The Court finds that Plaintiff is a qualified participant.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 9

2.  As discussed above, ERISA does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *Firestone*, 489 U.S. at 109. The parties, however, have stipulated to *de novo* review. *See* Dkt. #23 at 12. The Court accepts the parties' stipulation and reviews the record *de novo*. *See Rorabaugh*, 321 F. App'x at 709 (court may accept parties stipulation to *de novo* review). "When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010).   The administrator's "evaluation of the evidence is not accorded any deference or presumption of correctness." *Perryman v Provident Life & Acc. Ins. Co.*, 690 F Supp 2d 917, 942 (D. Ariz. 2010).   In reviewing the administrative record and other admissible evidence, the court "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014) (citing *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program,* 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010)).

3.  When a district court "reviews a plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant." *Id.* at 1294; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (the claimant "bears the burden of proving his entitlement to contractual benefits").

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 10

**B. Ms. Bigham is Disabled under the Plan**

4.   At issue is whether Ms. Bigham's condition qualifies as a disability under the LTD Plan.  The LTD Plan does not require Ms. Bigham to be completely incapacitated.  The Plan does not discuss intermittent disability or provide a threshold frequency of disabling symptoms.  Instead, Ms. Bigham will qualify as disabled under the Plan if she can establish that she is unable to perform, as a result of illness or disease, the responsibilities that she is normally required to perform in her occupation, which cannot otherwise be reasonably eliminated or modified.  AR000008; AR000015; AR000011. The parties do not dispute that Ms. Bigham has met the other requirements of the Plan.

5.   It is clear from the record that Ms. Bigham's job required her to be able to focus her thoughts and interact with others for long periods of time on a daily basis.  Doctors who personally examined Ms. Bigham, including Dr. Neiman, Dr. Girolami, and Dr. Goodman, concluded that Ms. Bigham's condition made it impossible to for her to reliably perform this essential job function.  *See* AR001690; AR001995-96; AR002380; AR002155.  This evidence alone is persuasive that Ms. Bigham is disabled under the Plan.  *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676-79 (9th Cir. 2011) (evidence showing that the doctors who personally examined the claimant concluded that he was disabled, even though insurance company's non-examining physicians found otherwise, supported finding that the claimant was disabled under terms of the plan).

6.   Liberty Life contends that Ms. Bigham's symptoms are purely subjective, and cites to *Jordan v. Northrup Grumman*, 370 F.3d 869 (9th Cir 2004) for the proposition that it is "appropriate for an administrator to require objective evidence of functional

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 11

restrictions." Dkt. #24 at 12. However, this citation does not convince the Court that purely subjective symptoms doom Ms. Bigham's claim for two reasons. First, unlike the Court here, the court in *Jordan* was reviewing the plan administrator's decision for abuse of discretion, not *de novo* review. The Court here is not required to grant any deference to Liberty Life's previous decisions. Second, the court in *Jordan* did not rule that subjective symptoms are insufficient evidence of disability, it found that the plaintiff in that case failed to provide sufficient medical documentation of functional restrictions:

> "…the administrator asked for evidence that the fibromyalgia she suffered from disabled her from working at her job. MetLife's letter to her doctors acknowledged their diagnosis of fibromyalgia, and asked 'based on her diagnosis . . . *what prevented your patient from performing her occupation*' and also asked ;what objective findings *prevented her from performing sedentary work*.' If Jordan's physicians believed that the effects of her fibromyalgia disabled her from performing her occupation, those medical experts could have responded to the administrator's request for further information with at least *some* answer explaining why the illness prevented Jordan from performing her work as a secretary. However, Drs. Reddy and O'Connor merely reiterated their conclusory findings of disability. They did not answer the quite reasonable inquiry of the administrator."

*Jordan*, 370 F.3d at 877 (emphasis in original). Here, Ms. Bigham's doctors *did* provide their medical opinions that her condition prevented her from performing her occupation. *See* AR001690; AR001995-96; AR002380; AR002155. Furthermore, subjective symptoms have been found in previous cases to be valuable evidence for a disability claim. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011) (a disability insurer cannot "condition coverage on proof by objective indicators such as blood tests where the condition is recognized yet no such proof is possible"); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872-

73 (9th Cir. 2008); *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013) ("…[S]ubjective complaints of disabling conditions are not merely evidence of a disability, but are an important factor to be considered in determining disability.").  As stated above, it is clear that Ms. Bigham's symptoms prevent her from doing her job.  Liberty Life provides no credible reason to disbelieve the reports of Ms. Bigham or her medical providers regarding her symptoms and their disabling consequences.

7. Liberty Life argues that the surveillance footage is "inconsistent" with Ms. Bigham's self-reporting of her pain physical capabilities, and calls into question whether "plaintiff in fact *does* suffer from debilitating pain and fatigue sufficient to preclude her from performing her own occupation..." Dkt. #24 at 12-16 (emphasis in original).  Liberty Life acknowledges that Ms. Bigham's medical records indicate that she has good days and bad days, but argues that "one would expect to see some evidence of pain or fatigue in plaintiff's behavior.... [in] the surveillance video…" *Id.* at 13.  Liberty Life argues that:

> Despite her claimed limitations, plaintiff has walked and stood for a total of 42 minutes without any sign of discomfort, let alone chronic and disabling pain. At no time does plaintiff bend carefully or walk gingerly. She does not grimace or limp. As she walks next to her friend in the dog park it is impossible to tell which individual is fine and which suffers "intractable pain" and "debilitating fatigue."

*Id.* After reviewing the surveillance footage and the rest of the record, the Court disagrees with Liberty Life's analysis and conclusions.  The surveillance footage neither proves nor disproves that Ms. Bigham's documented chronic intractable pain, fibromyalgia, seronegative spondyloarthropathy, cervical and lumbar degenerative disc disease, and related conditions prevent her from doing her job.  Ms. Bigham has never

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claimed that she cannot walk or lift a small dog.  Indeed, Liberty Life acknowledges that "Plaintiff's doctors reviewed the surveillance and each submitted a declaration that nothing in the video was inconsistent with plaintiff's self-reports." *Id.* at 15.  Just because Ms. Bigham did not grimace or limp in this limited window of surveillance does not mean that she is not experiencing significant pain *at the time*, or more importantly, at other times, and frequently.  The surveillance footage does not show Ms. Bigham in a workplace setting, or performing any of the complex tasks associated with her prior position at Amazon.  Nor does it catch Ms. Bigham in a lie, as implied by Liberty Life in their briefing at Dkt. #24 at 14 ("This is clearly inconsistent with plaintiff's assertion barely two weeks later…").  Ms. Bigham's estimates of her ability to walk 20-30 minutes and stand 5-10 minutes in a day do not deviate substantially from her abilities caught on film—Ms. Bigham is not seen jogging, or walking great distances without pause.  Any inconsistency with her estimates is simply insufficient to call into question her credibility and the credibility of her medical providers.

8.   Given the LTD Plan's definitions of "Disabled," "Sickness," and "Material and Substantial Duties," listed in the Findings of Fact, and based solely on the administrative record, the Court finds that Ms. Bigham was disabled within the meaning of the Plan *at least* during the time period in question—from her first application for STD benefits through end of the administrative record.  Without a change in Ms. Bigham's medical condition, there is no reason to conclude that she will not continue to be disabled as defined in the LTD Plan.

9.   The Court does not have sufficient evidence or argument before it determine whether Ms. Bigham is "unable to perform, with reasonable continuity, the Material and

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 14

Substantial Duties of…. any occupation that the [employee] is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." AR000007-08.  Ms. Bigham refuses to address this issue, finding it "not relevant here." Dkt. #10 at 3.  Liberty Life asserts that Ms. Bigham's 24-month LTD Plan coverage ends on October 8, 2015, after which benefits will only be awarded if she meets this "any occupation" standard.  Dkt. #23 at 22.  Liberty Life argues that, because it has not had the opportunity to review Ms. Bigham's claim under this standard, the Court should not award benefits beyond 24 months and instead remand to Liberty Life for further consideration.  *Id.*  The Court agrees and will therefore remand to Liberty Life the issue of extending benefits to Ms. Bigham beyond the 24-month period prescribed for "own occupation" benefits under the Plan.

10. A district court may award prejudgment interest in ERISA cases to compensate a plaintiff for the loss she incurred as a result of the defendant's nonpayment of benefits. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir.2001). Whether to award prejudgment interest "is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities."  *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985) (quoting *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.1971)).  Generally, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Rabbat*, 894 F. Supp. 2d at 1323 (quoting *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007)).

11. Plaintiff is entitled to receive long-term disability benefits from the beginning of her eligibility through the 24-month period prescribed in the Plan, to recover pre-judgment interest on those unpaid benefits consistent with the rate prescribed for post-judgment interest under 28 U.S.C. § 1961, and to recover her attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## V.     CONCLUSION

Having reviewed Plaintiff's and Defendant's cross motions, the responses in opposition thereto and replies in support thereof, the Court hereby FINDS and ORDERS:

1) Defendant's Motion for Judgment under Federal Rule of Civil Procedure 52 (Dkt. #24) is DENIED.

2) Plaintiff's Motion for Judgment under Federal Rule of Civil Procedure 52 (Dkt. #10) is GRANTED.  Plaintiff is entitled to receive long-term disability benefits from the beginning of her eligibility through the 24-month period prescribed in the LTD Plan, to recover pre-judgment interest on those unpaid benefits, and to recover attorney's fees and costs.  However, the Court REMANDS to Liberty Life the issue of extending benefits to Ms. Bigham beyond the 24-month period prescribed for own occupation benefits under the LTD Plan.

3) No later than ten (10) days from the date of this Order, Plaintiff shall file a Motion for Attorney's Fees, noting it for consideration pursuant to this Court's Local Rules. The motion shall be supported by documentary evidence reflecting the amount of fees sought, and shall include argument as to the authority upon which such fees may be granted and why such fees are reasonable.  Defendant shall file any

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 16

1
2
Response in accordance with the Local Rules, and Plaintiff may file a Reply in accordance with the same.

3
4) This matter is now CLOSED.

4
5
6
DATED this 11th day of December 2015.

7
8
9
_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANT'S CROSS
MOTION FOR JUDGMENT UNDER FRCP 52 - 17